UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA    :

    - v. -    :    **SEALED SUPERSEDING**
    **INDICTMENT**

MUSTAK Y. VAID,    :
PAUL J. MATHIEU,    S2 16 Cr. 763 (LGS)
EWALD J. ANTOINE,    :
MARINA BURMAN,
ASHER OLEG KATAEV,    :
   a/k/a "Oleg Kataev,"
ALLA TSIRLIN,    :
HATEM BEHIRY,
LINA ZHITNIK,    :
EDUARD MISELEVICH,
   a/k/a "Edik," and    :
IVAN VOYCHAK,
    :

    Defendants.

    :

- - - - - - - - - - - - - - - - - - X



COUNT ONE

(Conspiracy to Commit Health Care Fraud,
Mail Fraud, and Wire Fraud)

The Grand Jury charges:

### Background on Medicare and Medicaid

1.    The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

2.     The New York State Medicaid program ("Medicaid") is a federal and state health care program providing benefits to the individuals and families who meet specified financial and other eligibility requirements, and certain other individuals who lack adequate resources to pay for medical care.  CMS is responsible for overseeing the Medicaid program in participating states, including New York.  The New York State Department of Health (the "NY DOH") administers the Medicaid Program in New York State and, in part, contracts with approved private managed care companies that provide coverage directly to the individuals (known as Medicaid "beneficiaries") who receive benefits under Medicaid.

3.     Medicare and Medicaid are each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

4.     Medicare and Medicaid cover costs related to medical treatment -- such as the costs of physicians' services, diagnostic tests, outpatient care, prescription medications, therapy, durable medical equipment ("DME") including adult diapers and related items, and transportation to and from medical appointments.  Generally, such costs are covered only if, among other requirements, such services and items are medically necessary and ordered by a physician.

- 2 -

5.    Physicians and other medical providers and suppliers that seek to participate in Medicare and Medicaid and to bill Medicare and Medicaid for the cost of their treatment of Medicare and Medicaid beneficiaries and related benefits, items, and services are required to apply for and receive a provider transaction access number ("PTAN"). Physicians and other medical providers and suppliers are also required to apply for and receive a National Provider Identifier number ("NPI number").

6.    To receive reimbursement from Medicare or Medicaid for a covered service, a medical provider is required to submit a claim, either electronically or in writing. The claim forms require certain information, including (a) the beneficiary's name and identification number; (b) the NPI number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the NPI number of the doctor or other qualified health care provider who provided the health care benefit, item, or service that was the subject of the claim; as well as the doctor or other qualified health care provider who rendered the benefit, item or service; (d) the health care benefit, item, or service that was provided or supplied to the beneficiary; (e) the billing codes for the benefit, item, or service; (f) the date upon which the benefit, item, or service was provided or

- 3 -

supplied to the beneficiary; and (g) whether or not the beneficiary was also a Medicare or Medicaid recipient.   By submitting the claim, the provider certifies, among other things, that the services were rendered to the patient, were rendered by the doctor or other qualified health care provider identified as the renderer, and were medically necessary.

7.   For services provided to Medicaid beneficiaries who are covered through third party managed care companies (rather than directly through Medicare), health care providers submit claims to the private managed care companies that are directly administering the Medicaid program.   Those managed care plans pay the health care providers directly, and are then reimbursed by the NY DOH.

8.   Under Medicare and Medicaid, certain medical services - including certain examinations and diagnostic tests - are reimbursable only if they are performed under the direct supervision of a licensed physician.   Federal regulations specifically define "direct supervision" in an office setting, which requires, among other things, that the supervising physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure.   It does not mean that the physician must be present in the room when the procedure is performed.

9.   At all times relevant to this Indictment, pursuant to Section 1507 of the New York Business Corporation Law, all

- 4 -

medical clinics in New York State must have been owned and controlled by a licensed medical practitioner.

## Relevant Persons and Entities

10. At all times relevant to this Indictment, a co-conspirator not charged herein (the "True Owner") was the true beneficial owner of approximately eight medical clinics in Brooklyn, New York (the "Related Clinics"), which he operated to fraudulently bill Medicare and Medicaid. The True Owner was not a doctor or medical professional.

11. At all times relevant to this Indictment, the True Owner, together with others known and unknown, arranged for the Related Clinics to employ a number of doctors, drivers, and staff. Three of the doctors so employed were MUSTAK Y. VAID, PAUL J. MATHIEU, and EWALD J. ANTOINE, the defendants ("the Nominal Owner-Doctors"). The Nominal Owner-Doctors were medical doctors whose roles in the scheme included representing themselves to Medicare and Medicaid, as well as to the New York State Department of State (the "Department of State"), banks, and others as the true owners of one and more of the Related Clinics, and causing Medicare and Medicaid to be billed under their names, identifying numbers, and authorization information.

12. MUSTAK Y. VAID, the defendant, was one of the Nominal Owner-Doctors. From in or about January 2010 through at least in or about September 2011, VAID falsely represented himself to

be the owner of one of the Related Clinics, called "Ocean Side Medical of Brooklyn, P.C.," ("Ocean Side Medical"), and caused Medicare and Medicaid to be billed for medical services that VAID claimed to have performed, but which he did not in fact perform.  At and through Ocean Side Medical, VAID also signed and provided to other health care providers medical prescriptions and referrals for medical services, medications and medical supplies that were not medically necessary.

13.  From at least in or about March 2010 through at least in or about August 2011, MUSTAK Y. VAID, the defendant, falsely represented himself to be providing medical care at two more of the Related Clinics -- the Medical Office of Paul J. Mathieu, P.C. ("Medical Office of Paul J. Mathieu") and Sunlight Medical, P.C. ("Sunlight Medical") -- causing Medicare and Medicaid to be billed for medical services that VAID claimed to have performed, but which he did not in fact perform.  At and through the Medical Office of Paul J. Mathieu and Sunlight Medical, VAID also signed and provided to other health care providers medical prescriptions and referrals for medical services, medications, and medical supplies that VAID knew were not medically necessary.

14.  PAUL J. MATHIEU, the defendant, was another of the Nominal Owner-Doctors.  In particular, from at least in or about 2009 through at least in or about February 2013, MATHIEU falsely

- 6 -

represented himself to be the owner and director of at least

four of the Related Clinics, including the Medical Office of

Paul J. Mathieu, Sunlight Medical, Ocean View Medical of

Brooklyn, P.C. ("Ocean View Medical") and Oceana Medical, P.C.

("Oceana Medical"). MATHIEU caused Medicare and Medicaid to be

billed for medical services that he claimed to have performed,

but which he did not in fact perform. MATHIEU also signed and

provided to other health care providers medical prescriptions

and referrals for medical services, medications and medical

supplies equipment that MATHIEU knew were not medically

necessary.

15. EWALD J. ANTOINE, the defendant, was another of the

Nominal Owner-Doctors. In particular, from at least in or about

April 2012 through at least in or about March 2013, ANTOINE

falsely represented himself to be the owner and president of at

least three of the Related Clinics, including Sunlight Medical

and Psychiatric Services, P.C. ("Sunlight Medical and

Psychiatric"), Coney Island Medical Services, P.C. ("Coney

Island Medical"), and Medical Care of Kingsborough

("Kingsborough Medical"). ANTOINE caused Medicare and Medicaid

to be billed for medical services that he claimed to have

performed, but which he did not in fact perform. ANTOINE also

signed and provided to other health care providers medical

prescriptions and referrals for medical services, medications

- 7 -

and medical supplies that ANTOINE knew were not medically necessary.

16. At all times relevant to this Indictment, MARINA BURMAN, the defendant, represented herself to Medicare, Medicaid, and others as being the owner of Universal Supply Depot ("USD"), a company engaged in the business of selling DME, including adult diapers and related items. In truth and in fact, however, BURMAN and the True Owner were both beneficial owners of USD, and jointly owned the bank account into which USD received reimbursement from Medicare and Medicaid. Between in or about 2010 and in or about early 2013, USD received more than $3.5 million in reimbursement from Medicare and Medicaid for such DME. Generally, such costs are covered only if, among other requirements, such services and items are medically necessary and ordered by a physician. In the case of USD, many of the claims for reimbursement were for DME that BURMAN knew was not medically necessary and in many cases was not in fact provided.

17. From in or about 2011 through at least in or about 2012, ALLA TSIRLIN, the defendant, functioned as a manager and administrator at one and more of the Related Clinics.

18. From in or about January 2012 through at least in or about June 2012, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," and ALLA TSIRLIN, the defendants, were business partners of the True

Owner, and jointly with the True Owner controlled and oversaw the operation of a number of Related Clinics, including those located at 3057 Coney Island Avenue, Brooklyn, New York ("the 3057 Clinics").

a. In that capacity, KATAEV and TSIRLIN paid cash kickbacks to patients (the "Paid Patients") to induce those patients to receive medically unnecessary and non-existent medical examinations, tests, treatments and supplies at the Related Clinics, and at other health care providers.

b. Also in that capacity, KATAEV and TSIRLIN arranged for the 3057 Clinics to employ a number of doctors, therapists, drivers, and staff. Two of the doctors so employed were PAUL J. MATHIEU and EWALD J. ANTOINE, the defendants. As at other Related Clinics, the roles of MATHIEU and ANTOINE at the clinics overseen by KATAEV and TSIRLIN included functioning as Nominal Owner-Doctors.

19. At all times relevant to this Indictment, the True Owner, together with others known and unknown, arranged for the Related Clinics to employ a number of physical therapists and occupational therapists. One of those physical therapists was HATEM BEHIRY, the defendant, and one of those occupational therapists was LINA ZHITNIK, the defendant. BEHIRY and ZHITNIK were each enrolled as therapists in the Medicare and Medicaid programs.

20. From at least in or about 2008 through at least in or about September 2012, HATEM BEHIRY, the defendant, was employed as a physical therapist at one and more of the Related Clinics. BEHIRY also supervised and directed a number of additional physical therapists. In these roles, BEHIRY caused Medicare and Medicaid to be billed for physical therapy and related services that BEHIRY claimed to have performed and supervised - and that other physical therapists under BEHIRY's direction claimed to have performed and supervised - at one and more of the Related Clinics. In truth and in fact, BEHIRY and the other physical therapists under his control did not perform or supervise such physical therapy and related services.

21. From in or about November 2011 through at least in or about October 2012, LINA ZHITNIK, the defendant, caused Medicare and Medicaid to be billed for occupational therapy and related services that ZHITNIK claimed to have performed and supervised at one and more of the Related Clinics. In truth and in fact, ZHITNIK did not perform or supervised such occupational therapy and related services.

22. From in or about August 2012, through in or about early 2013, EDUARD MISELEVICH, a/k/a "Edik," the defendant, was the manager of one and more of the 3057 Clinics. In that capacity, MISELEVICH paid cash kickbacks to Paid Patients to induce those patients to receive medically unnecessary or non-

- 10 -

existent medical examinations, tests, treatments and supplies at the Related Clinics, and at other associated health care providers.

23. From in or about 2011, through at least in or about January 2017, EDUARD MISELEVICH, the defendant, was also a part-owner and operator of Garage Ambulette Service, Inc. ("Garage Ambulette"), which did business as "NYC Metro Care," a transportation company that transported Paid Patients to the Related Clinics. From in or about 2011, through in or about early 2013, MISELEVICH caused Garage Ambulette to receive reimbursement from Medicaid, by falsely claiming that the transportation was medically necessary and by knowingly using false referrals provided by the Owner-Doctors and others employees of the Related Clinics.

24. From in or about 2012, through in or about early 2013, IVAN VOYCHAK, the defendant, was the manager of one and more of the Related Clinics, including the 3057 Clinics and Coney Island Medical. In that capacity, VOYCHAK paid cash kickbacks to Paid Patients to induce those patients to receive medically unnecessary or non-existent medical examinations, tests, treatments and supplies at the Related Clinics, and at other associated health care providers.

25. From in or about 2011 through at least in or about January 2017, IVAN VOYCHAK, the defendant, was also a part-owner

and operator of Garage Ambulette. From in or about 2011 through
in or about early 2013, VOYCHAK caused Garage Ambulette to
receive reimbursement from Medicaid, by falsely claiming that
the transportation was medically necessary and by knowingly
using false referrals provided by the Owner-Doctors and others
employees of the Related Clinics.

OVERVIEW OF THE HEALTH CARE FRAUD SCHEME

26. From in or about 2007, through at least in or about
2013, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA
BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN,
HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and
IVAN VOYCHAK, the defendants, together with the True Owner and
others known and unknown (the "Co-Conspirators"), participated
in a massive scheme to defraud Medicare, Medicaid and other
insurance providers (the "Insurance Providers"). In the course
of the scheme, certain of the Co-Conspirators recruited people
insured by Medicare and/or Medicaid (the "Paid Patients") to
undergo medically unnecessary and non-existent medical
examinations, tests, and treatments at the Related Clinics, and
at other health care providers of diagnostic and testing
facilities, in exchange for cash payments to the Paid Patients
(the "Kickbacks"). The Co-Conspirators then billed Medicare,
Medicaid, and other insurance providers for medically
unnecessary and non-existent services.

27. From in or about 2007, through at least in or about 2013, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, together with others known and unknown, also provided to the Paid Patients prescriptions and referrals for medically unnecessary medications, transportation services, medical tests, and DME such as adult diapers kits. Those referrals and prescriptions in turn enabled third-party providers of health care services, suppliers of DME, diagnostic laboratories and testing facilities, and pharmacies to bill and receive payment from Medicare, Medicaid, and the other Insurance Providers, for medical services, medications and equipment that were not medically necessary and in many instances not even provided to the Paid Patients.

28. In the course of their fraudulent scheme, from in or about 2010 through in or about 2013 - encompassing only a portion of the time period of the conspiracy - the Related Clinics and the third-party providers of other medical services and supplies submitted claims for more than $33 million to Medicare and Medicaid for improper, unnecessary and non-existent services and supplies, for which Medicare paid more than $16 million in total reimbursements and Medicaid paid more than $11 million in total reimbursements.

## Means and Methods of the Conspiracy

29. Beginning in or about 2007, and continuing at least through 2013, the True Owner, along with ASHER OLEG KATAEV, a/k/a "Oleg Kataev," and ALLA TSIRLIN, the defendants, hired and employed, among others, MUSTAK Y. VAID, PAUL J. MATHIEU, and EWALD J. ANTOINE, the defendants, to function as Nominal Owner-Doctors. Each such Nominal Owner-Doctor was paid to, among other things, pose as the sole owner of one and more medical clinics. Each Nominal Owner-Doctor, along with others known and unknown, made such misrepresentations of ownership to, among others, Medicare, Medicaid, other Insurance Providers, New York State, and banks.

30. MUSTAK Y. VAID, PAUL J. MATHIEU, and EWALD J. ANTOINE, the defendants, were each hired and paid to enable the Related Clinics to bill the Insurance Providers for medically unnecessary services and tests purportedly performed at the Clinics, as well as to provide medical referrals and prescriptions for medically unnecessary medical services and supplies from third-party providers of medical tests, DME, medications, and related transportation services. Such medically unnecessary and in some cases non-existent services and supplies included office visits, diagnostic tests, magnetic resonance imaging (MRIs), medications such as expensive medical ointment compounds, and DME such as adult diaper kits.

31. The True Owner, along with ASHER OLEG KATAEV, a/k/a "Oleg Kataev," and ALLA TSIRLIN, the defendants, employed, hired and caused to be hired managers, financial and billing personnel, chiropractors, physical therapists, occupational therapists, medical and therapy assistants, drivers and other personnel, to help coordinate and carry out the fraud. The physical therapists so hired and employed included HATEM BEHIRY, the defendant. The occupational therapists so hired and employed included LINA ZHITNIK, the defendant. The managers so hired and employed included EDUARD MISELIVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants.

32. HATEM BEHIRY and LINA ZHITNIK, the defendants, were each hired and paid to enable the Related Clinics to bill the Insurance Providers for medically unnecessary therapy and related services purportedly performed at the Clinics, as well as to authorize courses of medically unnecessary and in some cases non-existent therapy and related services.

33. Certain Co-Conspirators recruited individuals with Medicaid and/or Medicare insurance to act as Paid Patients and undergo unnecessary medical tests at the Related Clinics and elsewhere, and to receive prescriptions and referrals for medically unnecessary medications and medical supplies, and to receive transportation in medical "ambulettes," including ambulettes operated by Garage Ambulette, all in return for

Kickbacks.  Such Kickbacks were paid inside and outside the Related Clinics by ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, as well as by other clinic employees, and drivers. For example:

a. From in or about May 2011 through in or about August 2011, MARINA BURMAN, the defendant, acting on behalf of the True Owner, delivered large packages of cash to the Related Clinics, to be used to pay kickbacks to Paid Patients, in accordance with prepared lists reflecting those Paid Patients who were to receive kickbacks each week.

b. On or about April 25, 2012, KATAEV and TSIRLIN paid a Kickback of $150 in cash to a Paid Patient for receiving medically unnecessary treatments at Ocean View Medical, which treatments were billed to the Insurance Providers.

c. On or about May 16, 2012, KATAEV paid a Kickback of $250 in cash to a Paid Patient for receiving medically unnecessary treatments at Ocean View Medical, which treatments were billed to the Insurance Providers.

d. In or about the latter half of 2012, MISELEVICH paid cash kickbacks to Paid Patients for receiving medically unnecessary treatments at Related Clinics including the 3057 Clinics, which treatments were billed to the Insurance Providers.

- 16 -

e. In or about the latter half of 2012, VOYCHAK paid cash kickbacks to Paid Patients for receiving medically unnecessary treatments at Related Clinics including the 3057 Clinics and Coney Island Medical, which treatments were billed to the Insurance Providers.

34. ASHER OLEG KATAEV, a/k/a "Oleg Kataev," and ALLA TSIRLIN, the defendants, and others known and unknown, instructed the Paid Patients that, in order to receive their Kickbacks, they should be transported to the Related Clinics by medical ambulettes, which transportation Co-Conspirators then billed to Medicaid. In order to provide support for such reimbursement from Medicaid, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, the defendants, provided documentation falsely stating that such transportation by ambulette was medically necessary. Thereafter, representatives of the transportation companies – including EDUARD MISELIVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants – caused claims to be submitted to Medicaid, and received more than $4 million in reimbursement for these medically unnecessary services.

35. At all times relevant to this Indictment, MARINA BURMAN, the defendant, who was provided by Co-Conspirators with access to the patient schedules of the Related Clinics, arranged on a regular basis to have lists sent from USD to the Related Clinics, identifying particular Paid Patients who, in furtherance of the fraud scheme, should be issued additional prescriptions for DME,

- 17 -

including for sets of incontinence products such as adult diaper kits. BURMAN caused such Paid Patients to be identified without regard to whether or not such DME was medically necessary.

a. Thereafter, MUSTAK Y. VAID, PAUL J. MATHIEU, and EWALD J. ANTOINE, the defendants, signed and issued large numbers adult diaper and other DME prescriptions for those Paid Patients identified on the lists sent from USD, without regard to whether those Paid Patients had any medical need for those supplies.

b. Co-Conspirators employed by the Related Clinics then arranged to have those prescription forms transmitted to BURMAN and USD, which in turn submitted claims to Medicaid and the other Insurance Providers, receiving more than $3.5 million in reimbursement for these medically unnecessary supplies. In many instances, BURMAN and USD in fact provided no DME to the Paid Patients, but instead allowed those Patients to exchange their DME prescriptions for valuable merchandise, such as designer handbags, clothing, bed linens, tablecloths, tableware, microwave ovens, and other housewares.

c. As a result of this scheme, for example:

i. From in or about January 2009 through in or about November 2009, USD submitted claims to Medicaid for more than $850,000 in reimbursement for DME, primarily adult diaper kits, based on referrals from MATHIEU, whose referrals represented

approximately 64% of all the Medicaid reimbursement sought by USD during that time period.

ii. From in or about April 2009 through in or about September 2009, MATHIEU wrote prescriptions for more than $300,000 worth of adult diapers, which was more than any other doctor in the State of New York.

iii. In or about 2011, USD submitted claims to Medicaid for more than $680,000 in reimbursement for DME, primarily adult diaper kits, based on referrals from VAID, whose referrals represented more than 35% of all the reimbursements sought by USD during that time period, and more than 20 times the amount based on referrals from any other doctor (except MATHIEU) to USD.

iv. From in or about November 16, 2011 through in or about February 2012, USD submitted claims to Medicaid for more than $41,000 in reimbursement for DME, primarily adult diaper kits, based on referrals from VAID.

v. In or about 2012, USD submitted claims to Medicaid for more than $1.1 million in reimbursement for DME, primarily adult diaper kits, based on referrals from MATHIEU, whose referrals represented approximately 64% of all the reimbursements sought by USD during that time period.

vi. From in or about July 3, 2012 through on or about December 31, 2012, USD submitted claims to Medicaid for more than $215,000 in reimbursement for DME, primarily adult diaper kits,

based on referrals from ANTOINE, whose referrals represented approximately 23% of all the reimbursements sought by USD during that time period, and more than nine times the amount based on referrals from any other doctor (except MATHIEU) to USD.

36. MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, a/k/a "Edik," the defendants, together with others known and unknown, arranged for the Paid Patients to receive referrals and prescriptions for medically unnecessary diagnostic tests, including MRIs, as well as prescriptions for medications such as expensive ointment compounds. Thereafter, such referrals and prescriptions, issued by the Nominal Owner-Doctors, were sent to specific medical testing companies and pharmacies, which in turn provided kickbacks to the True Owner.

37. MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, caused the Related Clinics, USD, and Garage Ambulette to submit materially false and fraudulent bills to the Insurance Providers - electronically and by mail - to deceive them into paying the Related Clinics, USD, Garage Ambulette and others for the aforementioned medical examinations, services, therapy, medications and medical supplies, which were medically

unnecessary and, in many instances, not provided at all.   As the
Co-Conspirators well knew, the bills were materially false in
multiple ways.   In addition to fraudulently seeking reimbursement
for unnecessary medical services and supplies, the bills falsely
indicated that many of the procedures had been administered by
licensed physicians, typically one of the Nominal Owner-Doctors,
even though the Nominal Owner-Doctors were not present at the
Related Clinics when many of these services were supposedly
provided.   For example:

a. In or about June 2010, VAID signed and submitted
medical records claiming that he had directly supervised the
examination of 26 patients at the Medical Office of Paul J. Mathieu
while he was in that clinic on June 8, 2010, and that he had
directly supervised the examination of four patients in Michigan
on that same date.

b. In or about November 2010, VAID signed and submitted
a medical record claiming that he had directly supervised the
examination of a patient at Ocean Side Medical while he was in
that clinic on November 5, 2010, when in fact he was in New Orleans,
Louisiana on that date.

c. In or about August 2011, VAID signed and submitted
medical records claiming that he had directly supervised the
examination of eleven Paid Patients at Ocean Side Medical while he

- 21 -

was in that clinic on Saturday, August 20, 2011, when in truth and in fact VAID did not work in the Related Clinics on Saturdays.

d. On or about December 14, 2011, a Co-Conspirator negotiated a check payable from Medicaid to Sunlight Medical, which check had been issued by Medicaid on November 21, 2011, and which check included more than $400 in reimbursements for medical services that VAID claimed to have rendered.

e. From in or about November 16, 2011 through in or about February 2012, BURMAN caused USD to submit fraudulent claims to Medicaid for more than $41,000 in reimbursement for DME, based on referrals from VAID.

f. On or about February 4, 2012, an occupational therapist at the Medical Office of Paul J. Mathieu signed and submitted medical records claiming that the therapist had provided therapy services to a Paid Patient, based upon a medical referral provided by VAID, which medical records were used to file a claim with the Insurance Providers.

g. In or about April 2012, MATHIEU signed and submitted medical records claiming that he had directly supervised the examination of 87 patients on April 19, 2012 at five different clinics, including the Medical Office of Paul J. Mathieu, Ocean View Medical, Sunlight Medical, and Sunlight Medical and Psychiatric.

- 22 -

h. In or about May 2012, MATHIEU signed medical records claiming that he had directly supervised the examination of 87 patients on May 24, 2012 at three different clinics, including the Medical Office of Paul J. Mathieu, Ocean View Medical, and Sunlight Medical.

i. On or about August 21, 2012, an employee of a third-party radiology laboratory signed medical records claiming that he had performed and evaluated an MRI, based upon a medical referral provided by VAID, which medical records were used to file two claims with the Insurance Providers.

j. In or about August 2012, LINA ZHITNIK, the defendant, signed and submitted medical records claiming that she had directly treated and supervised the treatment of patients at Sunlight Medical and Psychiatric on six days per week for the entire month of August 2012, when in truth and in fact, ZHITNIK was only present in those Related Clinics for portions of one or two afternoons per week during that time.

k. In or about September 2012, HATEM BEHIRY, the defendant, caused medical records to be submitted that claimed that BEHIRY had treated and supervised the treatment of approximately 36 patients at Ocean View Medical and Sunlight Medical on Saturday, September 29, 2012, when in truth and in fact BEHIRY was not present in the Related Clinics on Saturdays.

l. In or about September 2012, ANTOINE signed and submitted medical records claiming that he had directly supervised the examination of Paid Patients at Sunlight Medical and Psychiatric while he was in that clinic on 12 different dates in September 2012.

m. In or about November 2012, MATHIEU signed and submitted medical records claiming that he had directly supervised the examination of Paid Patients at Sunlight Medical and Psychiatric while in that clinic on 15 different dates in November 2012.

38.   MUSTAK Y. VAID, PAUL J. MATHIEU, and EWALD J. ANTOINE, the defendants, together with others known and unknown, made representations to the Insurance Providers, to banks, to the State of New York and to others, falsely claiming that VAID, MATHIEU, and ANTOINE owned the Related Clinics, when in fact - in violation of New York law as they well knew - the Related Clinics were not owned or controlled by licensed health care providers. For example:

a. On or about October 22, 2007, MATHIEU signed an official New York State form called a "Certificate of Incorporation," for submission to the Department of State, stating that MATHIEU was the sole owner and shareholder of Sunlight Medical.

b. On or about May 30, 2008, MATHIEU signed a Medicaid form entitled "Disclosure of Ownership and Control," identifying

MATHIEU as the sole person owning more than five percent (5%) of Sunlight Medical.

c. On or about January 10, 2010, VAID signed an official Certificate of Incorporation, for submission to the Department of State, stating that VAID was the sole owner and shareholder of Ocean Side Medical.

d. On or about February 27, 2010, VAID signed an official Medicare form on behalf of Ocean Side Medical, for submission to Medicare, identifying VAID as the owner of Ocean Side Medical.

e. On or about March 10, 2010, VAID signed an official form of New York Medicaid, for submission to Medicaid, identifying VAID as the sole person owning more than a five percent (5%) interest in Ocean Side Medical.

f. On or about July 27, 2011, MATHIEU signed an official Certificate of Incorporation, for submission to the Department of State, stating that MATHIEU was the sole owner and shareholder of Ocean View Medical.

g. On or about September 28, 2012, ANTOINE, signed an official Certificate of Incorporation, for submission to the Department of State, stating that ANTOINE was the sole owner and shareholder of Kingsborough Medical.

h. On or about December 5, 2011, ANTOINE, signed an official Certificate of Incorporation, for submission to the

Department of State, stating that ANTOINE was the sole owner and shareholder of Sunlight Medical and Psychiatric.

i. On or about April 19, 2012, ANTOINE signed a Medicaid form entitled "Disclosure of Ownership and Control," identifying himself as the sole person owning more than five percent (5%) of Sunlight Medical and Psychiatric.

j. On or about July 20, 2012, ANTOINE, signed an official Certificate of Incorporation, for submission to the Department of State, stating that ANTOINE was the sole owner and shareholder of Coney Island Medical.

39. The True Owner, together with other Co-Conspirators, opened and controlled bank accounts, including accounts in the respective names of the Related Clinics, for the purpose of depositing proceeds from this scheme.

40. The True Owner, together with other Co-Conspirators, transferred the proceeds of the scheme to the accounts of other companies that the True Owner and certain Co-Conspirators controlled.

STATUTORY ALLEGATIONS

41. From in or about 2007 through at least in or about 2013, in the Southern District of New York and elsewhere, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the

- 26 -

defendants, together with others known and unknown, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit mail fraud, wire fraud, and health care fraud, to wit, to cause Medicare and Medicaid to pay for fraudulent health care claims filed by and on behalf of the Related Clinics and other registered providers of health care services and supplies, for unnecessary and unperformed medical services and supplies claimed to have been provided to the Paid Patients, in violation of Title 18, United States Code, Sections 1341, 1343, and 1347.

42. It was a part and an object of the conspiracy that MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, together with others known and unknown, knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and would

- 27 -

and did take and receive therefrom, a matter and thing, and would and did knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, a matter and thing, in violation of Title 18, United States Code, Section 1341.

43.  It was a further part and an object of the conspiracy that MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, together with others known and unknown, knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

44.  It was a further part and an object of the conspiracy that MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN

- 28 -

VOYCHAK, the defendants, together with others known and unknown, knowingly and willfully, would and did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, as that term is defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349.)

### COUNT TWO

(Health Care Fraud)

The Grand Jury further charges:

45.  The allegations set forth in paragraphs 1 through 44 are incorporated by reference as if set forth fully herein.

46.  From in or about 2007 through at least in or about 2013, in the Southern District of New York and elsewhere, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, knowingly and willfully did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program, as that term is defined in Title 18, United

- 29 -

States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, to wit, the defendants caused Medicare and Medicaid to pay for fraudulent health care claims filed by and on behalf of the Related Clinics and other registered providers of health care services and supplies, for unnecessary and unperformed medical care, services, and supplies claimed to have been provided, prescribed or recommended by VAID, MATHIEU, ANTOINE, or one of their Co-Conspirators to Paid Patients.

(Title 18, United States Code, Sections 1347 and 2.)

## COUNT THREE

(Mail Fraud)

The Grand Jury further charges:

47.    The allegations set forth in paragraphs 1 through 44 are incorporated by reference as if set forth fully herein.

48.    From in or about 2007, through at least in or about 2013, in the Southern District of New York and elsewhere, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, having devised and intending to devise a scheme and

- 30 -

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, knowingly and willfully would and did cause to be placed in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did cause to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and would and did take and receive therefrom, a matter and thing, and would and did knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, a matter and thing, to wit, the defendants caused Medicare and Medicaid to pay for fraudulent health care claims filed by and on behalf of the Related Clinics and other registered providers of medical care, services, and supplies, for unnecessary and unperformed medical care, services, and supplies claimed to have been provided, prescribed, or referred by VAID, MATHIEU, ANTOINE, or one of their Co-Conspirators to Paid Patients, and in connection therewith and in furtherance thereof, caused materials to be sent and received using the United States mail and private and commercial interstate carriers.

(Title 18, United States Code, Sections 1341 and 2.)

- 31 -

## COUNT FOUR

### (Wire Fraud)

The Grand Jury further charges:

49. The allegations set forth in paragraphs 1 through 44 are incorporated by reference as if set forth fully herein.

50. From in or about 2007, through at least in or about 2013, in the Southern District of New York and elsewhere, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly and willfully did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendants caused Medicare and Medicaid to pay for fraudulent health care claims filed by and on behalf of the Related Clinics and other registered providers of medical care, services, and supplies, for unnecessary and unperformed medical care, services, and supplies claimed to have been provided, prescribed, or referred by VAID, MATHIEU, ANTOINE, or one of their Co-Conspirators to Paid Patients, and in connection therewith and in

furtherance thereof, transmitted and caused to be transmitted interstate wires of funds and claims for reimbursement from Medicare and Medicaid.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE

(Conspiracy to Make False Statements
Relating to Health Care Matters)

The Grand Jury further charges:

51. The allegations set forth in paragraphs 1 through 44 are incorporated by reference as if set forth fully herein.

52. From in or about 2007 through in or about at least 2013, in the Southern District of New York and elsewhere, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, together with others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to make false statements relating to health care matters, in violation of Title 18, United States Code, Section 1035.

53. It was a part and an object of the conspiracy that MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and

IVAN VOYCHAK, the defendants, and others known and unknown, knowingly and willfully, in a matter involving a health care benefit program, would and did falsify, conceal, and cover up by trick, scheme and device a material fact, and would and did make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1035.

## OVERT ACTS

54. In furtherance of the conspiracy and to effect the illegal objects thereof, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about January 10, 2010, VAID signed an official New York State form called a "Certificate of Incorporation," for submission to the Department of State, stating that VAID was the sole owner and shareholder of Ocean Side Medical.

- 34 -

b. On or about February 27, 2010, VAID signed an official Medicare form on behalf of Ocean Side Medical, for submission to Medicare, identifying VAID as the owner of Ocean Side Medical.

c. In or about November 2010, VAID signed and submitted a medical record claiming that VAID had examined a patient at Ocean Side Medical on November 5, 2010, when in fact he was in New Orleans, Louisiana on that date.

d. On or about October 13, 2011, two Co-Conspirators not charged herein stated to an investigator working on behalf of Medicare that VAID was the owner of the Ocean Side Medical.

e. From in or about November 16, 2011 through in or about February 2012, BURMAN caused USD to submit claims to Medicaid for more than $41,000 in reimbursement for DME, based on referrals from VAID.

f. On or about February 4, 2012, an employee of Related Clinic #1 signed and submitted medical records claiming that she had provided occupational therapy services to a Paid Patient, based upon a medical referral provided by VAID which medical records were used to file a claim with the Insurance Providers.

g. In or about April 2012, MATHIEU signed and submitted medical records claiming that he had directly supervised the examination of 87 patients on April 19, 2012 at four different clinics, including the Medical Office of Paul J. Mathieu, Ocean View Medical, and Sunlight Medical.

- 35 -

h. In or about May 2012, MATHIEU signed and submitted medical records claiming that he had directly supervised the examination of 87 patients on May 24, 2012 at three different clinics, including the Medical Office of Paul J. Mathieu, Ocean View Medical, and Sunlight Medical.

i. In or about August 2012, LINA ZHITNIK, the defendant, signed and submitted medical records claiming that she had directly treated and supervised the treatment of patients Sunlight Medical and Psychiatric on six days per week for the entire month of August 2012, when in truth and in fact, ZHITNIK was only present in those Related Clinics for portions of one or two afternoons per week during that time.

j. In or about September 2012, HATEM BEHIRY, the defendant, caused medical records to be submitted that claimed that BEHIRY had treated and supervised the treatment of approximately 36 patients at Ocean View Medical and Sunlight Medical, on Saturday, September 29, 2012, when in truth and in fact BEHIRY was not present in the Related Clinics on Saturdays.

k. In or about September 2012, ANTOINE signed medical records claiming that he had directly supervised the examination of Paid Patients at Sunlight Medical and Psychiatric while he was in that clinic on 13 different dates in September 2012.

l. In or about November 2012, MATHIEU signed medical records claiming that he had directly supervised the examination

of Paid Patients at Sunlight Medical and Psychiatric while in that clinic on 19 different dates in November 2012.

(Title 18, United States Code, Section 371.)

## COUNT SIX

(Conspiracy to
Violate the Anti-Kickback Statute)

The Grand Jury further charges:

55. The allegations set forth in paragraphs 1 through 44 and 54 are incorporated by reference as if set forth fully herein.

56. From in or about 2007 through in or about at least 2013, in the Southern District of New York and elsewhere, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, together with others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate the Anti-Kickback Statute, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

57. It was a part and an object of the conspiracy that MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, and others known and unknown, knowingly and willfully would and did offer and pay remuneration (including kickbacks, goods, and services), directly and indirectly,

- 37 -

overtly and covertly, in cash and in kind, to one and more persons to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering a good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

## OVERT ACTS

58. In furtherance of the conspiracy and to effect the illegal objects thereof, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. From in or about May 2011 through in or about August 2011, BURMAN delivered large packages of cash to the Related Clinics, to be used to pay kickbacks to Paid Patients.

b. On or about April 25, 2012, KATAEV and TSIRLIN paid a Kickback of $150 in cash to a Paid Patient for receiving medically unnecessary and non-existent treatments at one of the 3057 Clinics, which treatments were billed to the Insurance Providers.

c. In or about the latter half of 2012, MISELEVICH paid cash kickbacks to Paid Patients for receiving medically

unnecessary and non-existent treatments at the 3057 Clinics, which treatments were billed to the Insurance Providers.

d. In or about the latter half of 2012, VOYCHAK paid cash kickbacks to Paid Patients for receiving medically unnecessary and non-existent treatments at the 3057 Clinics, which treatments were billed to the Insurance Providers.

e. From in or about October 2012 through in or about January 2013, VOYCHAK paid cash kickbacks to Paid Patients for receiving medically unnecessary and non-existent treatments at Coney Island Medical, which treatments were billed to the Insurance Providers.

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATIONS

59. As a result of committing the offenses charged in Counts One, Five, and Six of this Indictment, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any and all property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offenses alleged in Counts One, Five, and Six of this Indictment.

60. As a result of committing the offenses charged in Counts One and Five of this Indictment, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, HATEM BEHIRY, and LINA ZHITNIK, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any and all property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offenses alleged in Counts One and Five of this Indictment.

61. As a result of committing the offenses charged in Counts Two through Four of this Indictment, MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD J. ANTOINE, MARINA BURMAN, ASHER OLEG KATAEV, a/k/a "Oleg Kataev," ALLA TSIRLIN, HATEM BEHIRY, LINA ZHITNIK, EDUARD MISELEVICH, a/k/a "Edik," and IVAN VOYCHAK, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any and all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts Two through Four of this Indictment, including but not limited to a sum of United States currency representing the amount of proceeds obtained as a result of the offenses.

## Substitute Asset Provision

62. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

- 40 -

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or deposited
with, a third person;

c.    has been placed beyond the jurisdiction of the
Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which
cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of the defendant up to the value of the above
forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853(p); and
Title 28, United States Code, Section 2461(c).)

FOREPERSON

PREET BHARARA
United States Attorney /pmk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MUSTAK Y. VAID, PAUL J. MATHIEU, EWALD
J. ANTOINE, MARINA BURMAN, ASHER OLEG
KATAEV, a/k/a "Oleg Kataev," ALLA
TSIRLIN, HATEM BEHIRY, LINA ZHITNIK,
EDUARD MISELEVICH, a/k/a "Edik," and
IVAN VOYCHAK,

Defendants.

SEALED SUPERSEDING INDICTMENT

S2 16 Cr. 763 (LGS)

(18 U.S.C. §§ 371, 1341, 1343, 1347,
1349, and 2)

PREET BHARARA
United States Attorney.

2/15/17 - Filed Sealed Super.sealing Indictment
Ba       a/w issued.
                        J Greenstein
                         USMJ